JAMES M. PETTIT, complainant,

*v.*

PORT NEWARK NATIONAL BANK OF NEWARK et al., defendants.

[Decided April 20th, 1932.]

*Mr. Arthur .T. Vanderbilt,* for the complainant.

*Mr. Raymond H. Berry,* for the defendant Johnston.

*Mr. George W. C. McCarter,* for the defendant McGregor.

BACKES, V. C.

The comptroller of the currency closed the Port Newark National Bank as being insolvent, and appointed a receiver who sold its assets for an amount sufficient to pay depositors. This bill is by a stockholder, on behalf of the bank, against its former officers and directors to recover the losses suffered by the bank through their maladministration and misadministration of its affairs, the receiver having refused and the directors being unwilling to sue in behalf of the bank.

The defendant Johnston, the cashier, answered, denying the charges and, by way of defense, sets up that just previous to the closing of the bank, one Stamler and one Waldron negotiated with stockholders for the purchase of a controlling interest of the capital stock, which negotiation was fruitless; that thereupon, the group holding a majority of the stock negotiated for its sale with the Merchants and Newark Trust Company with a view to making the bank a branch of the trust company; that an agreement had been reached which, if carried out, would eventually have yielded all stockholders $120 a share; that Stamler and Waldron "maliciously

and fraudulently intending to destroy the value of the stock * * * and to defeat the agreement, filed a bill in the United States district court wrongfully alleging that the bank was insolvent and wrongfully and willfully charging its officers and directors with negligence and malfeasance, for the purpose of depressing the value of the stock in furtherance of their scheme to secure control of said bank at a low figure, and, as a result of which the business and good will of the bank was lost to the stockholders and the value of their stock was depreciated from $120 a share to practically nothing." These allegations, elaborated, are also set up by way of a counter-claim against Stamler and Waldron. The counter-claim purports to be in behalf of the defendant Johnston and all other stockholders and creditors of the bank, and the prayers are for a trial by jury, on a feigned issue; that an account be taken of the loss suffered by the bank through the wrongful conduct of Stamler and Waldron; that an account be taken of the loss suffered by the stockholders, and that Stamler and Waldron be decreed to pay the losses.

The motion is to strike so much of the answer as sets up the subject-matter of the counter-claim, and the counter-claim.

The pleading has originality. Charged with plundering the bank, for that is the polite language of the bill, Johnston defends the loot because Stamler and Waldron rigged the stock. The defense is as absurd as it is impertinent and will be stricken out.

As to the counter-claim. If Stamler and Waldron are guilty of conspiracy, to the damage of the bank, it cannot be set up as a counter-claim; their offense does not relieve Johnston of making restitution. A counter-claim or cross-bill is brought, "* * * either (1) to obtain a discovery of facts in aid of the defense to the original bill, or (2) 'to obtain full relief to all parties touching the matters of the original bill.' Story Eq. Pl. § 389. 'It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-

matter of an original independent suit. The cross-bill is auxiliary to the proceeding in the original suit and a dependency upon it. * * * If its purpose be different from this, it is not a cross-bill, though it may have a connection with the said general subject.' " *Doremus* v. *Mayor, &c., of Paterson, 70 N. J. Eq. 296.* In *McAnarney* v. *Lembeck, 97 N. J. Eq. 361,* the complainant filed a stockholder's bill against the officers of the company to compel an accounting because of alleged wrongful appropriations. The defendants denied the allegations and filed a counter-claim charging the complainant with having fraudulently used the funds of the corporation. In affirming the decision of this court striking out the counter-claim, the court of errors and appeals said: "By force of chancery rule No. 70, a counter-claim is a substitute for a cross-bill, and only those matters which were formerly the proper subject of a cross-bill can be set up in a counter-claim. The purpose of a cross-bill is to enable a defendant to make his defense more complete and effectual than it would be if he stood on an answer alone, but the new facts which he may introduce into pending litigation by means thereof are such, and such only, as it is necessary for the court to have before it in deciding the questions raised in the original suit, so that the court may do full and complete justice to all of the parties in respect to the cause of action on which the complainant rests his right to relief. Testing the validity of the counter-claim by this rule, it is clear that the action of the court of chancery in striking it out was entirely proper, for, assuming the facts set up therein to exist, those facts have no connection with or bearing upon the cause of action against the defendants set out in the bill." In *Beller* v. *Fenning (Ch. 1927), 101 N. J. Eq. 430,* this court dismissed a counter-claim which was unrelated to the claim made by the bill and which was not essential to a proper determination of the cause of action set forth in the bill. Answering a contention similar to one now made by the defendant Johnston, the court said: "The defendant concedes that his counter-claim could not be maintained when we

called the cross-action a cross-bill, but he contends that it is permissible under rule 28, which reads: 'Subject to the provisions of other rules herein contained, a defendant may counter-claim or set-off any cause of action against the complainant. He may, and when required by the court shall, issue subpœna against any third party necessary to be brought in; but in the discretion of the court, separate hearings may be ordered; or if the counter-claim cannot be conveniently disposed of in the pending action, the court may strike it out.' He intimates that the court of errors and appeals, in deciding the case just cited [McAnarney v. Lembeck] overlooked the rule, and he argues, in effect, that by virtue of its provision, any and all unrelated and independent causes of action against the complainant may now be the subject of a counter-claim or set-off. Carried to its extreme that would permit a wife to ask for support in her husband's suit to decree a resulting trust in lands held by her, or allow an action for damages for assault and battery as an offset to a foreclosure suit. The context of the rule does not permit the latitude of construction claimed for it. In terms and in effect it is circumscribed by, consistent with and subject to the provisions of rule 70. The rule invoked, as to counterclaims, was not intended to allow alien issues, nor other than those that could be tendered by a cross-bill to be pleaded, and as to set-offs, only those that may discharge or reduce the complainant's demand. Neither of the rules has the effect of substantially altering the then existing practice." These cases are controlling and dispositive.

The conduct of Stamler and Waldron, if actionable, is cognizable at law in an action for damages for conspiracy to depress the value of the stock. Such an action resides in the stockholders individually; it is not the subject of a class suit and cannot be brought by one stockholder for the benefit of the rest. If the bank was injured a right of action is in that institution. Here the bank is not a party to the counterclaim and it does not purport to be brought in its behalf, though in the prayer we are asked to grant relief to it. These

are added reasons for striking the counter-claim. It will be stricken out.

The defendant Johnston asks a trial by jury and claims it of right under *P. L. 1915 p. 185,* which provides: "If any question, ordinarily determinable at law and requiring jury trial, arise in a suit of which the court of chancery has jurisdiction, a jury trial, if required, may be ordered, but shall be deemed to be waived unless demanded in the pleadings. In case of such demand, if the issue be one requiring a jury trial, the court shall send such issue of fact to a court of law for trial according to the existing practice." A suit against directors for fraud and mismanagement is not "ordinarily determinable at law and requiring jury trial." They are triable in equity. *Brown* v. *Vandyke, 8 N. J. Eq. 795; Citizens Building, Loan and Savings Association* v. *Coriell, 34 N. J. Eq. 383; Ackerman* v. *Halsey, 37 N. J. Eq. 356; Williams* v. *McKay, 40 N. J. Eq. 189; Campbell* v. *Watson, 62 N. J. Eq. 396; LaMonte* v. *Mott, 93 N. J. Eq. 229.*

\*      \*      \*      \*      \*      \*      \*

The defendant McGregor, president of the bank, moves that the cause be stayed until he shall have been discharged as a bankrupt in proceedings now pending in the federal court in bankruptcy, contending that his discharge will relieve him of accountability in this suit. "Section 17 of the Bankruptcy act (*11 U. S. C. A. § 35*) provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except as '[second] are liabilities for obtaining property by false pretenses or false representations,' or '[fourth] were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity.'"

The complaint charges that McGregor executed loans aggregating approximately $200,000 on behalf of the bank to persons known by him to be financially irresponsible; that he loaned the bank's money to Carlin and others for the purpose of buying speculative stock and upon the agreements of the borrowers to divide any profits made with him; that in

order to circumvent the statutes prohibiting loans in excess of ten per cent. of the bank's capital, he caused loans to be granted for him in the names of others while his loans aggregated the maximum amount permitted by law, and that the persons used by him for this purpose were known by him to be financially irresponsible; that he issued a cashier's check for $9,380 to pay for stock without any deposit having been made for the check, and that he later caused a note to cover the amount of the cashier's check to be executed by a person known by him to be financially irresponsible; that he loaned the bank's money to various persons for the purpose of buying speculative stocks upon agreements to divide any profits made; that he withdrew collateral which he had deposited as security for his personal loans, without reducing his loans; that he destroyed bank records to cover his wrongdoings and "wrongfully maintained fictitious entries, altered notes, executed loans upon agreements to divide profits from resale of stocks purchased with said money thus borrowed, borrowed and executed loans in excess of the maximum permitted by law, and otherwise defrauded the Port Newark National Bank and its stockholders," in short and in substance, not mincing words, that he stole the bank's money. If the charges do not come within the definition of debts "created by fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity," then the English language has failed.

The motion to stay is denied.