The bill is to foreclose a mortgage given by the defendant company. Defendants Brown, Spitzer and Van Syckle are (with other obligors) obligors on the two bonds secured by the mortgage, and have each filed answer and counter-claim, which complainant moves to strike.
As to the answer of Brown, — the motion is to strike, as sham, those portions of paragraphs 1, 2, 3, 5, 6, 8, 9, 10, 11, 13 and 14 thereof which deny, or allege no knowledge or information sufficient to form belief as to, the allegations of paragraphs 1, 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18 and 19 of the bill. Affidavits in support of the motion were duly served and filed. No counter affidavits were filed, nor was any objection made by this defendant, at the hearing, to the granting of this motion. Complainant's affidavits fully prove the allegations of the bill and establish that the specified paragraphs of the answer are sham. This motion will be granted, except as to that portion of paragraph 14 of the answer subsequent to the semi-colon therein. This last mentioned part of paragraph 14 will however be also stricken on the ground that it is not responsive to the bill and sets up nothing which in any wise constitutes a defense to the bill. Defendant's denial of any personal liability to complainant is utterly irrelevant and immaterial to a bill which seeks only to subject the mortgaged premises to the payment of the amount which the mortgage was given to secure. MontclairSavings Bank v. Sylvester, 122 N.J. Eq. 518,194 Atl. Rep. 811.
As to the counterclaim of Brown, — the motion is to strike the same (a) as sham; (b) as being improper as a counterclaim in this suit. *Page 295 
The counterclaim alleges the making of certain agreements by complainant with the defendant mortgagor, without the assent of the defendant Brown, extending the time of payment of the mortgage debt, and seeks decree exonerating defendant Brown, in whole or in part, from any personal liability with respect to any indebtedness arising out of the bonds.
The allegations of this counterclaim, assuming them to be true in fact, constitute no defense whatever to a foreclosure suit.Montclair Savings Bank v. Sylvester, 122 N.J. Eq. 518,194 Atl. Rep. 811. Whether or not such a claim for exoneration from liability on the bond can and should be entertained as a counterclaim in the foreclosure suit, the appellate court was not called upon to determine, and did not determine in theSylvester suit; nor has it, apparently, determined this particular question in any other cause.
In the Sylvester suit, supra, this court entertained the counterclaim, but deferred action on it until the completion of the foreclosure suit. The same course was indicated in UsbeBuilding and Loan Ass'n v. Ocean Pier Realty Co., 112 N.J. Eq. 580,165 Atl. Rep. 580; and in Midland Corp. v. Levy.118 N.J. Eq. 76, 177 Atl. Rep. 685, Vice-Chancellor Fielder took a similar course with respect to a counterclaim (in a foreclosure suit) alleging a set-off as against any personal liability which might exist on the part of the defendant-counterclaimant with respect to the obligation on the bond.
On the other hand, in McAnarney v. Lembeck, 97 N.J. Eq. 361,127 Atl. Rep. 197, this court struck and declined to entertain a counterclaim the contents of which were not relevant or material to the case set forth in the original bill and which would not have been proper, under the old practice, as the subject matter of a cross-bill; and the appellate court held that this was not error, under the provisions of chancery rule 72 (then rule 70). In Beller v. Fenning, 101 N.J. Eq. 430, 139 Atl. Rep. 327,
and again in Pettit v. Port Newark Nat'l Bank, 110 N.J. Eq. 324,160 Atl. Rep. 34, this court took a similar action, on the same ground, and held that chancery rule 28 gave no authority to entertain the counterclaim *Page 296 
but that rule 28 was limited by rule 70, — (now rule 72); and that a counterclaim of a cause of action, unrelated to the claim made by the bill and not defensive to the complainant's right to the decree sought by the bill, was not maintainable under the chancery rules. See also Hoffman v. Maloratsky, 112 N.J. Eq. 333,164 Atl. Rep. 260, and Hackensack Trust Co. v. Kelly,118 N.J. Eq. 587, 180 Atl. Rep. 621, aff'd 120 N.J. Eq. 596,187 Atl. Rep. 195.
With respect to the issue now under consideration, the law as disclosed by the decisions hereinbefore cited, seems to be that as a general principle, equity will not entertain a counterclaim which is not germane to the cause of action set forth in the bill and not material to any claim of defense to, or modification of, the relief prayed by the bill; and that an order striking such a counterclaim on that ground is not error.
It further appears that, notwithstanding this general principle, this court has in at least two instances, (theMontclair Bank case and the Midland Corp. case, supra), declined to strike a counterclaim which could properly have been stricken under the authorities mentioned; and in a third case, — the Usbe case, — although the counterclaim was in fact stricken as having no meritorious foundation in fact, the court said that but for this last fact, it would be proper to retain the counterclaim, although dealing with it as a matter separate and distinct from the main suit.
It is of course obvious that, as a practical matter, the course taken in the Montclair Bank and Midland Co. cases and theUsbe case dictum, are quite at variance with the McAnarney,Beller and Pettit cases and the expressions therein. There is however no fatal conflict between the two sets of cases, from the point of view of legal principle. The legal situation is simply this, — that whether or not this court in any particular suit will strike, or will retain, a counterclaim which embodies nothing other than an entirely separate and independent cause of action, depends solely on the discretion of this court. Assuming that the present chancery rule 72, taken by itself alone, impliedly proscribes, (by failing to authorize), the setting up by way of counterclaim any other matter than that *Page 297 
which under the previous practice was the proper subject of a cross-bill, — naturally such proscription, being merely a chancery rule, may be waived by the chancellor (so long as no substantial right of complainant is prejudiced by so doing). TheMcAnarney case is assuredly no determination to the contrary; it simply affirms as right and proper the striking of the counterclaim in that case. It does not say that a refusal to strike would have constituted reversible error. And, notwithstanding what was said by this court to the contrary inBeller v. Fenning, supra, (which cannot be deemed to be the law at present, in view of the subsequent dictum in the Usbe
case and the action of this court in the Midland Corp. andMontclair Bank cases) rule 28 obviously does authorize (subject to the provisions of other rules) that which rule 72 does not expressly prohibit, i.e., the entertaining of counterclaims which would not have been the proper subjects of cross-bills. And this is further indicated by rule 27, which provides that "the court may order a separate hearing of, or may strike out, any cause of action which cannot be conveniently heard with other causes of action joined in the same suit." A counterclaim which was the proper subject of a cross-bill, would of course have to be heard and determined with, and as a part of, the determination of the cause presented by the bill. Furthermore rule 26, and all of rules 18 to 26, are all obviously intended to permit (in proper cases), the joining of causes of action which could not have been joined under the previous practice. See also rule 15. It may further be noted as of some significance, — whatever be the force and effect thereof, — that all of these new rules were initiated and first set forth in and by legislative enactment, —P.L. 1915, c. 116, p. 184 (see section 11 and the schedule at the end).
It seems clear that both the purpose and the result of these rules is to leave matters of this kind, — questions as to the entertaining in a single suit various separate and independent causes of action, whether these questions arise as to the bill or as to a counterclaim or as to a combination of both, — resting entirely in the discretion of this court, to be dealt with in such *Page 298 
manner as the circumstances of each case indicate may be for the convenience and best interest of the court and the parties. Under these rules of procedure the court thus may entertain in one and the same suit the cause of action set forth in the bill and a separate and independent cause of action set up by counterclaim; and will do so in such exceptional cases as are presented where the particular circumstances are such as to lead the court to the conclusion that such a course will be best.
On the other hand the fact that the court may do so, should not and does not lead to the conclusion that the court ought to adopt this practice in all cases, — or in any case where there do not exist exceptional circumstances justifying such course. It still remains true that, in general, refusal to entertain a separate and independent counterclaim is the best and most convenient practice and involves less risk of undesirable results arising from complication between issues and situations which are entirely separate and unrelated but which may seem more or less interdependent merely because of their collocation in the single suit. Action is quite apt to be taken, or to be withheld, with respect to one or the other of the causes of action, which results in the delay of trial or determination of that issue or otherwise affecting it, simply because the two causes are presented to the minds of court and counsel at the same time in the one suit, — action for which there is in fact no sound basis and which would not occur if the two causes of action were presented in two separate suits as they naturally should be.
It is felt, therefore, that the procedure sanctioned by long practice and experience and the weight of authority should still be adhered to as the general rule, and that a separate and independent counterclaim should ordinarily not be permitted, — should be permitted only in a case where the circumstances are such as to show a real justification therefor or a probable benefit to be derived therefrom.
What reason is there for the waiving of this general rule in the present case, or in any ordinary foreclosure suit where complainant's only claim is for decree of foreclosure and sale, *Page 299 
and the additional defendants are joined only to give them notice, under the statute, so as not to be precluded from bringing a subsequent deficiency suit, and where such defendants have no defense against a decree for foreclosure and sale but seek to set up by counterclaim a claim of right to decree exonerating them from personal liability?
No reason appears to have been expressed in the MontclairBank case; the action taken appears to have been rested solely on the precedent and authority of the Midland Co. case and theUsbe Co. case. In the Midland Co. case (q.v., at p. 80), the action was solely rested on the authority and reasons in theUsbe case. The latter case therefore seems to be the sole basis for the exceptional procedure sought by the defendants in the instant case.
The opinion in the Usbe case was by the same vice-chancellor who wrote the strong opinions adverse to this exceptional procedure in Beller v. Fenning and Pettit v. Port, c.,Bank, supra, — and was written only a year after the Pettit
opinion. Yet, curiously, there is no mention of either of these cases, — nor of the divers similar decisions both in this court and the appellate court, — in the Usbe opinion, which expresses a view directly contrary to the principles of all of the prior counterclaim cases mentioned. That view was dictum, because, as already mentioned, the counterclaim was in fact stricken. The opinion states, — p. 582, — that it was stricken on the ground that the agreement set up in the counterclaim and relied upon as a novation discharging the surety's liability for any deficiency, did not in fact constitute any such novation; but the order which was entered was an order striking the answers and counterclaim, "with leave to the defendants * * * to plead any equitable defense to liability on the bond, in the event that a deficiency suit be instituted against them." This action was entirely in conformity with the principle which had been laid down in all the previous cases (hereinbefore cited), and directly contrary to the views expressed in the dictum at the bottom of p. 583. The case, therefore, is obviously no authority for the course suggested in the dictum, but quite the opposite, — it is authority against that course. *Page 300 
The reasons set forth in the dictum in the Usbe case, for the adoption of the course there suggested, are that the defenses thus sought to be interposed by counterclaim in the foreclosure suit, were defenses cognizable only in equity, and could not be set up in defense of a deficiency suit at law; that if sued at law, defendant would have to come to equity for relief; that to avoid circuity and multiplicity of suits, his equitable defenses ought to be entertained and the counterclaim retained pending the decree of foreclosure and sale, — (unless complainant agrees to bring no deficiency suit), — for reasons of simplicity, convenience and economy of time and cost. No other reason is set forth in the Midland Co. case, (q.v., p. 80).
Consideration of these reasons shows that there is nothing in them which could not have been (and doubtless was) urged with equal propriety in all those cases which establish the general principle against entertaining a counterclaim which is in nowise defensive to the bill. The anomaly of retaining in a foreclosure suit such a counterclaim, as a defense to another suit which has not been brought, (and may never be brought), is obvious. And since, if it be retained, it is to be separately treated and considered, just as if it were an independent bill, then where is there any advantage in permitting it to be filed or retained in the foreclosure suit?
Simply as an aid to defense against an apprehended deficiency suit, the counterclaim in question is not needed unless and until such deficiency suit be brought; and it belongs in that deficiency suit, not in the foreclosure suit. As an independent cause of action, — (i.e., as a bill for decree of exoneration or discharge), — it likewise has no place in a foreclosure suit; it can and should be brought, considered and dealt with as a matter entirely separate therefrom.
In the instant case the chief reason urged, — and it is strongly urged, — on the part of the defendants-counterclaimants, in support of their contention that the counterclaim should not be stricken but should be retained, is that they ought to be allowed to have the question as to whether or not they have been discharged from liability on the bond *Page 301 
first determined before any sale in foreclosure takes place. They seek to have the counterclaim retained in this suit, in order that they may later make an application herein to have the foreclosure sale stayed until after the determination of the question of their liability on the bond if the bond be not satisfied out of the proceeds of sale. Indeed the counterclaims pray such restraint.
But even if the counterclaims were retained, such prayer or application would have to be denied. The same argument was presented to, and overruled by, this court in the Usbe case,supra, — (q.v., p. 584) — where it is pointed out that such a course would favor the obligor or surety at the expense of the mortgagee, who is entitled to his foreclosure decree and sale irrespective of whether or not there is any personal liability by obligor or surety.
It would of course be very helpful for one who prima facie is liable as surety for any balance of the mortgage debt which may remain unsatisfied by the proceeds of the foreclosure sale, and who claims that such contingent liability on his part has become released or discharged, to have the benefit of knowing definitely, at the time of foreclosure sale, whether he has been discharged or is still liable. In the latter case he would probably desire to bid at the foreclosure sale in order to protect his own interests; in the former event he would not be concerned as to what price the mortgaged premises brought. But to accord such a privilege to the alleged surety would be a great detriment to the mortgagee, who although admittedly entitled to his money immediately, — or at least such part of it as can be obtained by sale of the mortgaged premises, — would be compelled to wait a year or so while the question of the surety's personal liability was litigated in this court and doubtless in the appellate court. The adverse effect which the adoption of such a principle would have on the loaning of money on mortgage security in this state is obvious. Moreover it might well turn out that all the time and expense of such litigation was wasted, — that the proceeds of the foreclosure sale were sufficient to pay the debt and leave no deficiency for the surety to pay even if liable. *Page 302 
Especially is this latter true in the instant case; there is no allegation that the mortgaged premises are not ample security for the mortgage debt. Rather the contrary: it is alleged in the affidavit by defendant Brown, that the mortgagor-obligor offered to deed the premises to the morgtagee in satisfaction of the mortgage debt, — implying that the premises were at least equal in value to the debt, — and that such offer was refused. There was no duty on the part of the mortgagee to accept it even though the value of the premises be ample to cover the mortgage debt. The mortgagee is entitled to its money; the mortgagor-obligor or sureties have no right to compel the mortgagee to take the property in lieu of the money.
In addition to the conclusion in the Usbe case, — that the surety has no right to stay of the foreclosure until determination of the question of his liability as surety, — there is the pronouncement of the appellate court in the MontclairBank case, supra. It is there said (p. 525) "Nor is there exhibited a purpose to clothe the party so answerable on the basic obligation with the right to have his liability thereon determined before the sale of the lands in the foreclosure proceedings. Such a construction would nullify the outstanding, fundamental policy of the statute," et seq. See, also, S.C.,p. 521, top.
(There is an additional reason in the instant case which would, independently, also lead to the denial of the application for stay of the foreclosure proceedings. It appears that the acts by complainant which are claimed to result in the discharge of the sureties occurred in 1929 and 1932, and that the sureties then had knowledge thereof. They could immediately have filed their bill for decree of exoneration and discharge, but they did not do so. They waited several years until after complainant's bill to foreclose. "Equity aids the diligent, not those who sleep on their rights." Application now made for stay delaying complainant, for which there would have been no need or basis had the applicants not been guilty of this long delay, has no equitable appeal).
This argument as to the right of the surety to a determination as to his liability prior to foreclosure sale, is an apt illustration *Page 303 
of the complications likely to arise if independent counterclaims be entertained, and of the inadvisability of such a practice.
In accordance with the reasons herein set forth, and the great weight of precedent and authority, the counterclaim will be stricken entirely, — but of course without prejudice to the right of the counterclaimant to set up the matters therein contained, either by way of independent suit or defense to any other suit. Furthermore, the striking will be on condition that complainant acknowledge service, or agree so to do, of subpoena in the independent suit, if such be instituted by defendant.
This counterclaim being stricken as improper in law, it seems neither necessary, advisable nor proper to consider the contentions of complainant that the allegations thereof are untrue in fact.
As to the answer and counterclaim of defendant Spitzer, — for reasons the same as, or similar to, those already stated, the counterclaim (including both causes of action) will be stricken as constituting no defense to the bill and not properly cognizable in this suit; and there will also be stricken as sham all of paragraphs 1, 2, 3, 5, 6, 8, 9, 10, 11, 13 and 14 of the answer, except the specific admissions made in those paragraphs, and except that portion of paragraph 14 after the semi-colon, which said portion however will also be stricken as not responsive to the bill and insufficient as a defense. This order will also be without prejudice, and upon condition as aforesaid.
So also as to the answer and counterclaims of defendant Van Syckle. Paragraphs 2 and 3 of that answer will be stricken as sham, and paragraphs 4 and 5 will be stricken as in nowise any defense to the bill. The counterclaim against defendants Greenbaum and Brown, and the entire counterclaim against complainant, will be stricken as in nowise defensive to the bill and as not properly cognizable in this suit. This order will be without prejudice as aforesaid, and on like condition. *Page 304 
Perhaps a word should be added concerning the decision inRosenwasser v. Weiss, [*]124 N.J. Eq. 14, 199 Atl. Rep. 64,
— inasmuch as counsel for one of the present defendants relied strongly on that case as indicating that it was incumbent upon a surety to set up in the foreclosure suit an allegation of the fact that he was, or claimed to be, a surety and not a principal debtor although he had signed the bond as an obligor.
It is true that the headnote to the report in the Rosenwasser
case says that it was held by the court "that the procedure to establish the fact that complainant was a surety on the bond should have been by a petition presented in the original foreclosure proceedings and not through the medium of a bill filed in an independent suit." Even if the headnote were correct, this would be no authority for the filing of a counterclaim, — a petition is not a counterclaim; but a reading of the opinion in this court and the opinion in the appellate court shows that in neither of them is there any such determination as that quoted above from the headnote.
The headnote should read "Held, that the procedure to establish the allegation that the actual value of mortgaged premises bought in by the mortgagee at foreclosure sale was greater than the mortgage debt, and that complainant's liability on the bond was therefore fully satisfied, must be by petition in the foreclosure suit and not by independent bill."
Examination of the bill on file in the Rosenwasser suit shows that the case was essentially similar to Broadman v. ColonialBuilding and Loan Ass'n, [*]118 N.J. Eq. 275,178 Atl. Rep. 775; that the thing which complainant sought by his independent bill was a determination (1) that the actual value of the mortgaged premises, which had been bought in by the mortgagee for $100 at foreclosure sale, was at least $14,000 or more than the amount of the foreclosure decree; (2) that the mortgagee be decreed to credit such alleged actual value against complainant's liability on the bond; and (3) that (such credit being for more than such liability), the mortgagee be restrained from suing for deficiency. Vice-Chancellor Egan in dismissing the bill, and the appellate *Page 305 
court in affirming, did nothing more than follow the principles established in the Broadman case.
It may be added that the Moore case, mentioned in theRosenwasser opinion, was a very different kind of suit. Examination of the file in that case shows that the decree exonerating Moore from liability for deficiency was not in anywise based on any finding of value of mortgaged premises, but on a finding that the mortgagee-obligee had been guilty of an entirely different kind of inequitable conduct toward the complainant surety on the bond, which entitled him to discharge from liability on the bond. Obviously claim for such relief was properly made by independent bill, and could not properly have been made in the foreclosure suit. *Page 306